## Little Beaver Valley Post VFW License

*T. A. Tenor*, for appellant.

SOHN, J., May 27, 1949.—An appeal was allowed from an order of the Pennsylvania Liquor Control Board, refusing to issue a club liquor license to Veterans of Foreign Wars of Little Beaver Valley Post 8106. The facts were found by the board, and some of the reasons assigned for the refusal to issue the license are:

1. The premises proposed to be licensed are within 300 feet of the Rocky Springs United Presbyterian Church.

2. A protest in opposition to the granting of the license to applicant has been filed on behalf of the church.

3. Other protests in the form of petitions signed by residents of the community have been filed with the board in opposition to the issuance of a license to applicant.

4. The pastor of the church appeared at the hearing and testified that his congregation is opposed to the granting of this license in premises within 300 feet of the church building.

5. A number of the other protestants also appeared and testified concerning their objections to the granting of the license at this location.

Testimony was taken before the court and there is no controversy as to the facts referred to in this opinion. In June 1948 the club purchased premises situate in the Borough of New Galilee, in this county, and thereafter remodeled the premises and equipped the same for use by the club. On September 27, 1948, an application for a liquor license was filed with the Pennsylvania Liquor Control Board. The rule previously adopted by the Pennsylvania Liquor Control Board and in effect when appellant purchased the property, provided that measurement should be from the curb at a point opposite the patrons' entrance of applicant's building and extended to a point on the curb opposite the nearest entrance door to a church, school, etc. As measured under this regulation of the board, it is conceded that the proposed licensed premises are 350 feet from the church. On September 15, 1948, the Pennsylvania Liquor Control Board adopted a new regulation for measurement. The new regulation provides that measurement shall be made or calculated in a straight line between fixed points or stations from the part of

the church nearest to the place proposed to be licensed, to a point on the place proposed to be licensed which is nearest to the church. Measured in this manner, the distance between the Rocky Springs United Presbyterian Church and the proposed licensed premises is 292 feet.

Section 202 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, 47 PS §744-202, is as follows:

"The board may, from time to time, make such regulations, not inconsistent with this act, as it may deem necessary for the efficient administration of this act. The board shall cause such regulations to be published and disseminated through the Commonwealth in such manner as it shall deem necessary and advisable."

Section 403 of the act in part provides as follows:

". . . Provided, however, That, in the case of any new license or the transfer of any license to a new location, the Board may, in its discretion, grant or refuse such new license or transfer if such place, proposed to be licensed, is within three hundred feet of any church, hospital, charitable institution, school or public playground . . ."

At the hearing before the court Rev. W. W. Willis, pastor of the Rocky Springs United Presbyterian Church and 20 members of the church testified and said they objected to the issuance of the license because of the proximity of the proposed licensed premises to the church.

In Azarewicz Liquor License Case, 163 Pa. Superior Ct. 459, Judge Arnold said:

"By a long line of decisions we have held that the proceedings are irregular where, on a matter within the board's discretion, the court of quarter sessions, without making specific and different findings of fact, undertakes to alter, change or rescind the discretion

exercised by the board—usually a penalty imposed: *Appeal of East End Ex-Service Men's Association*, 162 Pa. Superior Ct. 512, 58 A. 2d 194, and the cases cited therein.

"Where, under the facts found, there is no latitude of decision, we cannot correct errors in law. A different situation is presented where, as here, under the facts found, a discretion is to be exercised as to what the decision shall be. The facts being here admitted, and the statute vesting in the board the sole discretion, under the facts found, either to grant or to refuse the license, these proceedings were irregular, unless some factor gave to the court below that which it clearly did not possess, i. e., a discretion to grant or refuse the license; and we must reverse unless the court below regularized them.

"The attempt to make the proceedings regular consisted only in the court's promulgation of an error. Since it did not possess the discretion to grant or refuse the license, it could not obtain it by making a mistake. The court, in spite of the Act, held that the board had no discretion, but was compelled to issue the license. To rationalize this the court said that the applicant had a malt or brewed beverage license in the same premises, (which was true), and that the instant application was not for a new license, but in substitution or exchange of one type of license for another."

In Kensington Club Liquor License, 164 Pa. Superior Ct. 401, at 407, Judge Reno said:

"Hence, the grant of licenses is a duty not to be lightly assumed either by the board or the courts. The board acts in an administrative, or perhaps, in a quasi-judicial capacity. On appeal the courts exercise a judicial function: *Schlaudecker v. Marshall*, 72 Pa. 200, upon a question of public concern; *Raudenbusch's Petition*, 120 Pa. 328, 14 A. 148, in which the good order

and morals of the community must be considered and zealously guarded. *Taylor's License*, 68 Pa. Superior Ct. 543. The primary consideration is the public interest: *Strouse v. Nye*, 53 Pa. Superior Ct. 304, and no one has any property in the right to sell liquor. *Com. v. Spence*, 230 Pa. 571, 79 A. 775. There is no inherent or constitutional right to engage in the liquor traffic, and whether one shall be permitted to exercise the privilege is a subject of paramount importance to the public. The public welfare, the impact of licenses upon the peace of the community, and their influence upon the morals of the people are primary, and they are so fundamentally important that the whole tribunal should be called upon to adjudicate the question."

In Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, at 258, President Judge Keller said:

"Appellant's error is in treating the matter as if an applicant for a retail liquor license, by filing his application, obtained a contract or property right, which could not be taken away from him by the legislature without making compensation to him. The filing of such an application gives a person no contract or property rights at all: *Fanning's License*, 23 Pa. Superior Ct. 622, 628; *Cochran's License*, 47 Pa. Superior Ct. 376, 381. In the former case this court said: 'It has been frequently said by our Supreme Court that no man has a right to a license.' In the latter, 'The applicant has no absolute right to a license although complying with the statutory requirements, but he has a right to a hearing and decision on his application.' See also *Keiper's License*, 21 Pa. Superior Ct. 512, 516. In *Raudenbusch's Petition*, 120 Pa. 328, 340, 342, 14 A. 148, Mr. Justice, afterwards Chief Justice Paxson, speaking for the court said: 'The petitioner assumes that he is entitled as a matter of right to a license, upon complying with the provisions of the act of 1887, in the absence of any allegation that he is an improper per-

son to be so licensed. This is the fallacy which underlies his case, as well as the able argument of his learned counsel. He has no such absolute right, nor has any other man in the commonwealth. . . . *Neither the petitioner nor any other person in this state has any property in the right to sell liquor'* (Italics supplied.) Whether any license shall be granted, and what licenses shall be granted are legislative questions *(Schlaudecker v. Marshall*, 72 Pa. 200, 206) and subject at all times to the control of the legislature. A liquor license, even when granted, is not a property right. It is only a privilege: *Grime v. Dept. of Public Instruction*, supra, pp. 381, 384; *Harris v. State Board*, 287 Pa. 531, 538, 539, 135 A. 237; *Blumenthal's Petition*, 125 Pa. 412, 415, 18 A. 395; *Buck's Est.*, 185 Pa. 57, 60, 39 A. 821; *Mueller's Est.*, 190 Pa. 601, 603, 42 A. 1021; *Beer Co. v. Mass.*, 97 U. S. 25, 33. It may be taken away by the governing authorities without compensation to the holder. It was done throughout this entire country by the Eighteenth Amendment to the Federal Constitution, and the Twenty-first Amendment, which repealed the Eighteenth, expressly reserved to the states the right to prohibit the manufacture, possession, sale and imporation of intoxicating liquors within their respective borders: *Com. v. One Dodge Motor Truck*, 123 Pa. Superior Ct. 311, 334, 187 A. 461, affirmed 326 Pa. 120, 191 A. 590; *Com. v. Stofchek*, 322 Pa. 513, 185 A. 840. A state may adopt a lesser degree of regulations than total prohibition: *State Board v. Young's Market*, 299 U. S. 59, 63. It may regulate the transportation, etc., of intoxicating liquors within its borders no less than prohibit their manufacture, sale and possession: *Ziffrin, Inc. v. Reeves*, 308 U. S. 132. The regulation of the sale of intoxicating liquors is a matter peculiarly within the police power of the several

states, because of the evils which result from the uncontrolled traffic in them."

In Appeal of the Lyfolmar Company, 48 Lack Jur. 65, 72, President Judge Leach said: "Discretion has been defined in Words and Phrases, Volume 12, page 591 as follows:

'The term "discretion" denotes the absence of a hard and fast rule. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion not exercised arbitrarily or wilfully but with due regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'

"A Pennsylvania definition of an abuse of discretion is as follows:

'Abuse of discretion is not merely an error of judgment, but if in reaching the conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence or the record, discretion is abused.' *Mielcuszny v. Rosol*, 317 Pa. 91, pp. 93-94."

When the club purchased the real estate the regulation of the board as to measurement was such as to lead appellant to believe that proximity to the church would not be a reason for refusal of the license. The regulation was changed September 15, 1948. The application was filed September 27, 1948. The privilege of dispensing liquor is granted only in accord with the provisions of the act. The regulation providing for the measuring of distances in a straight line is reasonable. This regulation was in effect 12 days before appellant filed its application. It is bound by it. Section 403 of the Pennsylvania Liquor Control Act, relating to the issuance of licenses, provides that "in the case of a club [the board] may, in its discretion, issue a license." For this additional reason, the court cannot reverse the or-

der of the Pennsylvania Liquor Control Board refusing to issue a license. We conclude that the board did not abuse the discretion vested in it. Whether or not the license should issue was therefore solely within the discretion of the board.

### Order

And now, to wit, May 27, 1949, it is ordered, adjudged and decreed that the action of the Pennsylvania Liquor Control Board in refusing to issue a club liquor license to the Veterans of Foreign Wars of Little Beaver Valley Post 8106, for premises located at the corner of Washington and Monroe Streets, in the Borough of New Galilee, County of Beaver, is sustained.