Labor Lyceum Association, Inc., License

C. A. Cassone, for appellant.

R. H. Jordan, for appellee.

HENNINGER, P. J., KOCH, J., April 1, 1957.—The Pennsylvania Liquor Control Board after hearing found that appellant had permitted minors to frequent the licensed premises on April 20, 1956, and on divers other occasions, and had furnished minors with liquor and/or malt or brewed beverage on the same occasions and imposed a penalty of 40 days' suspension upon appellant.

Appellant has appealed from said suspension contending: (1) The findings of fact upon which the ruling was based did not show violations "on divers other occasions"; (2) facts do not indicate any violation of the Liquor Code; (3) appellant is not guilty; (4) findings, decision and order are arbitrary, capricious and unlawful, and (5) the penalty is capricious, excessive and oppressive.

The court fixed November 13, 1956, for hearing the appeal, whereupon appellant caused subpoenas to issue addressed to Patrick E. Kerwin, A. J. Mayhew, Jr., Isobel Calnan and H. Robert Goldstan.

Two identical subpoenas are addressed to Patrick E. Kerwin, concerning whom the parties have stipulated that he is chairman of the Pennsylvania Liquor Control Board, and order him to bring with him "all files, documents, reports, correspondence, citations, notices, notes of testimony, correspondence, documents and records" relating to 30 specified cases which had been adjudicated by the board.

The subpoena addressed to A. J. Mayhew, Jr., who is identified as chief of records of said board, is in

identical language and content with those addressed to Patrick S. Kerwin. The one addressed to Isobel Calnan, who has been identified as a hearing stenographer for the board, directs her to bring with her correspondence, shorthand notes, notes of testimony, reports, exhibits, records and documents in her possession relating to three local citations, including the one involved in this appeal. The one addressed to H. Robert Goldstan, Esq., who has been identified as the hearing examiner in this case and in the cases cited in the Calnan subpoena, called upon Goldstan to produce the records of those cases.

The board moved this court to quash the Kerwin and Mayhew subpoenas and the parties have stipulated that the other subpoenas shall be considered as included in the motion to quash. The reason assigned in the motion to quash is that hearings before the court on appeal from the board are de novo and therefore the records of other cases are irrelevant and incompetent.

Appellant resists the motion to quash as an improper method of attacking the incompetency and irrelevancy of evidence and denies the necessity of being called upon at this time to reveal its theory of relevancy.

The board has cited as authority for the motion to quash the case of American Car & Foundry Co. v. Alexandria Water Company, 221 Pa. 529, where it is stated, page 534:

"Prior to the trial the defendant served upon Lowery a subpoena duces tecum, commanding him to produce at the trial certain books and papers. It was not specific, but was couched in the most indefinite terms. Thereupon Lowery petitioned the court, setting forth that it would put the plaintiff to a tremendous amount of trouble and expense to produce all the books and papers required by the subpoena; that it would require a number of very large boxes to transport them and

that they would then be exposed to destruction, and that he was advised that the greater part of the books and papers were not and could not become material in any way to the issue to be tried, and praying that he might be relieved from compliance with the subpoena. The court granted the prayer of the petition, and confined the production of books and papers to such only as might be shown to be material in the case. This action of the court is made the subject of the first assignment of error.

"The learned judge was entirely right in his conclusion."

It is to be noted that the language in the above case confining production to such books and papers that might be shown to be material necessarily implies a pretrial demonstration of materiality.

The decision in the American Car & Foundry case was sustained in Annenberg v. Roberts, 333 Pa. 203, 214, and in Deen's Appeal—Taylor's Appeal, 135 Pa. Superior Ct. 376, 387.

We come then to two fundamental questions: (1) Is the evidence demanded relevant to the inquiry before the court; and (2) can a State administrative body be compelled to divulge the rationale upon which it exercises its discretion?

We inquire then whether the evidence asked is relevant.

Our duty is defined by section 471 of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §4-471, which reads in part:

". . . Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court."

There are two important distinctions between the wording of this clause and that of the corresponding

clause in section 464 of the same act, 47 PS §4-464, which reads in part:

". . . The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the board. The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license to the applicant."

While the words "de novo" do not occur in section 471, a de novo hearing is spelled out by the language of the section since the court is to exercise its discretion and is to act upon *its* findings and conclusions.

There is more significance in the absence from section 471 of the review of "administrative discretion," provided for in section 464. Our learned brother, Judge Pinola of the Luzerne County courts, held in Exeter Township Victory Club's Appeal, 87 D. & C. 88, that since an appellant has received his day in court, it is immaterial what irregularities there may have been before the board. That case was based upon a series of Supreme Court cases decided upon similar statutes: Commonwealth v. Cronin, 336 Pa. 469, 474; Commonwealth v. Walkinshaw, 373 Pa. 419, 422. In the Exeter Township case, supra, part of the testimony was heard by one examiner and part by another and yet this was held to be immaterial since the court heard the case de novo and had to decide the facts from the testimony it heard and not from that heard by the examiners and used by the board in arriving at its findings.

Appellant's protection from unfounded findings on the part of the board lies in the power of the court to modify the penalty if, from the evidence it hears, it does not make the same findings as those of the board. To be specific, it is immaterial that the board

found "frequenting" although there may be evidence of the presence of minors on only one occasion. If at the hearing before the court, we do not find frequenting, the penalty can be reduced or revoked; if the evidence justifies a finding of frequenting, then appellant has lost nothing, since what may have been improperly found before the board will have been properly found by the court.

As we understand appellant's prime reason for production of the evidence it demands, it is to show that there has been prejudicial bias by the board against appellant because the penalty imposed is more severe than that imposed upon others who have committed equally serious violations. Appellant has just cause for fear if such prejudicial bias exists, because if we find that the violations occurred as found by the board, we are bound to the penalty invoked by the board: Mami's Liquor License Case, 144 Pa. Superior Ct. 285, 292; Andracchio Liquor License Case, 160 Pa. Superior Ct. 74, 80; Elite Social Club And Debating Society Liquor License Case, 156 Pa. Superior Ct. 457, 461; Pacewicz Liquor License Case, 152 Pa. Superior Co. 123.

Appellant points out that although the language of section 471 of the Liquor Code of 1951 above cited seems to render broader powers to the court than that of section 410 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended by the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, our courts have continued to apply the rule under the earlier act to the Liquor Code of 1951, above cited. This is undoubtedly the case and we are bound by those decisions: Italian Citizens National Association of America Liquor License Case, 178 Pa. Superior Ct. 213, 216; Heights Fire Co. Liquor License Case, 181 Pa. Superior Ct. 56, 60; Reiter Liquor License Case, 173 Pa. Superior Ct. 552, 558.

It is true then that while we may correct any errors of the board on the finding of facts and on any erroneous conclusions of law (Obradovich Liquor License Case, 386 Pa. 342), if they have in our opinion erred in the imposition of penalty, we are powerless to correct such a situation unless we are able and willing to find that their action was the result of bad faith, fraud, capricious action or abuse of power: Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 573; Eways v. Reading Parking Authority, 385 Pa. 592, 597.

While we have no record of anyone having used such procedure to prove arbitrary or capricious action, there are countless cases in which such charges have been made and in which courts have attempted to ease the penalty imposed by the board. We need cite but two cases (Ajax Club Liquor License Case, 153 Pa. Superior Ct. 473, and Reiter Liquor License Case, supra) to illustrate the futility of such an attack. In both of those cases, a license was revoked on a first offense and the Superior Court held that the actions of the board were fully justified.

Another instance in which the good faith of the board was challenged was Zermani Liquor License Case, 173 Pa. Superior Ct. 428, in which the Superior Court upheld the right of the board to choose one of seven applicants for the only license available under the Quota Law.

While there are cases in which the administrative discretion may be challenged (Hotchkiss Liquor License Case, 169 Pa. Superior Ct. 506, 511; Burrell I. B. P. O. E. of W. 737 Liquor License Case, 172 Pa. Superior Ct. 346), we are of the opinion that the evidence demanded in this case has no bearing upon the end sought, namely, to show that the penalty imposed was arbitrary, capricious, excessive and oppressive.

We assume that appellant's counsel with his customary integrity, perspicacity and diligence has sought out 30 typical cases. After all, however, they are but 30 of hundreds of cases passed upon each year by the liquor control board. In Allentown's Appeals, 147 Pa. Superior Ct. 385, it was held that 207 assessments showed only a pattern of inconsistency. The same would be true in this case. To admit evidence of these 30 cases would invite introduction of others, would require evidence seeking to explain the rationale of each case and would embroil the court in endless hearings. How important the difference may be between 40 days as against 20 days we cannot say, except that in a compromise it would involve the sum of $200, which amount cannot of course be ignored. Every judge can understand the shades of difference between one case and another and can realize that inequality of penalty does not spell injustice by any means. The opposite arbitrary rule of thumb has been well satirized by Gilbert and Sullivan in "Let the punishment fit the crime."

In judging the severity of the penalty, we must compare it not as being twice as severe as others, but in comparison with the total power of the board, which extends all the way to revocation and makes this one a comparatively lenient penalty, expecially if it should develop as suggested by board counsel in his brief that this is a second citation against appellant.

The penalty imposed is well within the limit of the power and discretion of the board, distinguishing this case from Obradovich Liquor License Case, supra, and even if appellant could demonstrate that it is the first retailer to be subjected to this penalty for the offense proved, we would not be disposed to find that the additional penalty, if any, that was imposed in this case proved that the penalty was either excessive or oppressive or that it had been arbitrarily or capri-

ciously imposed. There is no charge of bad faith or fraud.

As we understand appellant's argument, the subpoenas directed to the stenographer and hearing examiner are intended to demonstrate, inter alia, that the decision was reached hastily and without the benefit of the notes of testimony.

We do not intend to rule that the deliberations of administrative bodies are sacrosanct or that in a proper case their records are not subject to subpœna (but see Hartranft Appeal, 85 Pa. 433) or that any presumption of propriety of their actions (see Henry on Evidence, sec. 674, vol. 2, p. 113) is irrebuttable.

We are ruling merely that a quick decision by the board without notes of testimony is not evidence that their action is either arbitrary, capricious or unlawful. We shall not permit production of either the board members or their records to show such action, since the evidence demanded would not support the proposition to be proved.

Board members and their employes are not lightly to be subpoenaed to the 67 counties of the State to the detriment of the more important duties assigned them by the legislature. There is nothing in the present appeal which would demand their presence.

Appellant raises the point in its brief that the notes of testimony before the board are not admissible before the court upon appeal, challenging our ruling in Vienna Grille Revocation Appeal, 22 Lehigh 447, that we would demand a transcript of the board record upon appeal. That ruling related solely to the desirability of receiving an authoritative record of board proceedings, rather than placing reliance upon an appellant's loose paraphrase of action appealed from. It did not relate to notes of testimony before the board. The validity of our rule is demonstrated by its vio-

lation. We are greatly hampered in our decision of this issue by the lack of the board's record of the case.

As a matter of practice, however, counsel for most appellants and for the board have usually found it convenient to submit their case upon the prior testimony with or without the right of supplementation of additional evidence before the court.

It has been the practice of this court to permit evidence before the court if desired and, in the absence of a ruling to the contrary, we intend to continue that practice. Despite the elimination from section 471 of the Liquor Code of 1951 of the words "hearing de novo," the code, by requiring independent findings of fact, implies, although it does not prescribe, that the court on appeal shall base its decision solely on evidence heard by or submitted to the court.

We make this ruling fully cognizant of the fact that the language of section 471 is also capable of an interpretation that it does not grant the right to a hearing de novo for it could be interpreted that the court was to make its independent findings of fact and conclusions of law upon the board's notes of testimony. See 42 Am. Jur. Public Administration Law, p. 663, §226.

Pennsylvania Rules of Civil Procedure 1 to 13 relating to appeals from administrative agencies do not provide for hearings de novo, but those rules do not apply because they relate only to appeals authorized by the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.1 to §1710.51, and that act, sec. 46, 71 PS §1710.46, excepts appeals to courts other than the Court of Common Pleas of Dauphin County.

Whether or not the hearing is de novo, this court surely could, for any legitimate purpose, inquire into the record and testimony before the board. That record may in fact become relevant and competent evidence either for purposes of contradiction of a witness or

inability to procure a witness for a court hearing. We shall pass upon that question when it arises.

Now, April 1, 1957, the motion of the Pennsylvania Liquor Control Board to quash the subpœnas duces tecum addressed to Patrick E. Kerwin, A. J. Mayhew, Jr., Isobel Calnan and H. Robert Goldstan is granted and said subpoenas are quashed. Either party may order this appeal upon any hearing list.